IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TAMARA D. BRASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 6873 |
| | ) | |
| COOK COUNTY, COOK COUNTY JUVENILE | ) | |
| TEMPORARY DETENTION CENTER, EARL | ) | |
| DUNLAP, Transitional Administrator of Cook | ) | |
| County Juvenile Temporary Detention Center, | ) | |
| Individually and in His Official Capacity, | ) | |
| BRENDA WELCH, Deputy Transitional | ) | |
| Administrator of Cook County Juvenile | ) | |
| Temporary Detention Center, Individually and in | ) | |
| Her Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

In her seven-count Amended Complaint (Dkt. No. 12), plaintiff Tamara Brass ("Brass") alleges that defendants Cook County, Cook County Juvenile Temporary Detention Center ("JTDC"), Earl Dunlap, Transitional Administrator of the JTDC ("Dunlap"), and Brenda Welch, Deputy Transitional Administrator of the JTDC ("Welch"), are liable for harassing Brass and retaliating against her for certain protected activities in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1983, and that these defendants are further liable under 42 U.S.C. § 1983 for terminating Brass without just cause.

1

Pending before the court are Cook County's motion to dismiss Brass's claims against Cook County and the JTDC (Counts I, II, and VII) (Dkt. No. 25) and Dunlap and Welch's motion to dismiss Brass's claims against each of them (Counts III-VI) (Dkt. No. 42). For the reasons set forth below, Cook County's motion is granted and Counts I, II and VII are dismissed in their entirety. Dunlap and Welch's motion is granted in part and denied in part. Counts IV and VI are dismissed in their entirety, and Counts III and V are dismissed insofar as they allege violations of § 1983. Counts III and V remain pending against Dunlap and Welch to the extent they allege violations of Title VII.

## BACKGROUND

At this stage in the litigation, the court under the law must accept the factual allegations set forth in Brass's Amended Complaint as true for purposes of ruling on the pending motion. *Fednav Int'l Ltd. v. Continental Ins. Co.*, 624 F.3d 834, 837 (7th Cir. 2010). Therefore, the facts set forth below are stated from that perspective.

Brass is a former employee of the JTDC, where she served as a Clerk IV and Administrative Assistant II from September 1996 through her termination in November 2009. (Dkt. No. 12 ("Am. Compl.") ¶ 7.) Brass generally alleges that "[s]ince Dunlap's appointment Plaintiff has been subjected to intentional, systematic and continuous harassment by [Welch][1] and the then Acting Deputy Superintendent, Mullins." (*Id.* ¶ 9.)

---

[1] Confusingly, Brass refers to Welch as the "Administrator" in her Amended Complaint, despite otherwise acknowledging that Dunlap is the "Transitional Administrator" of the JTDC and Welch is the "Deputy Transitional Administrator." (Am. Compl. ¶¶ 5-6.) Brass's allegations of "intentional, systematic and continuous harassment by Administrator" (*id.* ¶ 9) therefore appear to be directed at Welch, not Dunlap, as construed by defendant Cook County (*see* Dkt. No. 25 at 4).

As a matter of procedure, district courts are permitted "to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). This court takes judicial notice of the fact that defendant Dunlap was appointed by District Judge John A. Nordberg to serve as the Transitional Administrator of the JTDC ("TA") on August 14, 2007, in the case of *Doe v. Cook County*. (*See* 99 C 3945, Dkt. No. 330 ("Appointment Order") ¶ 4.) The court also takes judicial notice that defendant Welch was initially appointed by the court in June 2006 to serve as the Compliance Administrator of the JTDC, and has served as Deputy Transitional Administrator under Dunlap. (*See* 99 C 3945, Dkt. No. 139.)

In December 2008, Brass complained to Mullins, to Brass's AFSCME union representative, and to the EEOC about comments made by Welch about "Plaintiff's nipples showing through her clothes." (Am. Compl. ¶¶ 12, 14.) In retaliation for Brass's sexual harassment complaint, Welch and Mullins thereafter prevented Brass from properly signing in and out of work, subjected her to "frivolous" disciplinary allegations based on falsified or erroneous timesheets, stripped her of her job duties, assigned her duties that were outside the scope of her employment, and ultimately terminated her employment. (*Id.* ¶¶ 10-11, 13, 15-16.) During this same time period, Welch ordered Brass "to destroy files containing medical and legal documents, log books and other information that were often needed for FBI, DCFS, Inspector General investigations as well as other litigation." (*Id.* ¶ 17.) Brass refused to destroy these documents and complained to the Inspector General about Welch's order to destroy them. (*Id.* ¶¶ 17-18.) In retaliation for Brass's refusal to destroy the documents, Brass was accused of

3

falsifying her timesheets and was suspended for three days. (*Id.* ¶ 17.) Brass was also further retaliated against for both her sexual harassment complaint and her refusal to destroy documents, in that she was denied her requests for time off, forced to work in unsafe conditions, and verbally threatened by Welch, who at one point "symbolically point[ed] her fingers as an imaginary gun and shot[ ] Plaintiff." (*Id.* ¶ 19.)

Brass filed a claim for retaliation with the EEOC on July 30, 2009, received her right-to-sue letter on August 5, 2009, and filed this lawsuit on November 2, 2009. (*Id.* ¶¶ 20-21, 23.) Brass was terminated from her employment on November 9, 2009, with an effective date of November 4, 2009. (*Id.* ¶ 23.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint generally must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

If the allegations of a complaint "fail[ ] to state a claim upon which relief can be granted," the complaint will be dismissed. Fed. R. Civ. P. 12(b)(6). In making its determination in this case, the court construes Brass's Amended Complaint in the light most favorable to Brass, accepts as true all well-pleaded factual allegations set forth therein, and draws all reasonable inferences in Brass's favor. *Fednav Int'l Ltd.*, 624 F.3d at 837.

ANALYSIS

The claims in Brass's Amended Complaint can be grouped into two main categories. The first category includes Brass's claims for "retaliation," brought against Cook County (Count I), the JTDC (Count II), Dunlap (Count III), and Welch (Count V). These claims are asserted under both § 1983 and Title VII. The second category of claims includes Brass's claims for "42 U.S.C. § 1983 Action," alleged against Dunlap (Count IV), Welch (Count VI), and Cook County and the JTDC (Count VII). Because the court's analysis is different for Title VII claims and for § 1983 claims, the court structures the analysis that follows according to the relevant statute.

1. Brass's 1983 Claims

   A. Claims Against Cook County

Cook County argues that it cannot be held liable for the actions of Dunlap or Welch under § 1983, because Dunlap and Welch do not possess final policymaking authority on behalf of Cook County. Under the *Monell* line of cases, "municipal liability [under § 1983] is limited to action for which the municipality is actually responsible." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). Accordingly, a municipality can only be held responsible for a plaintiff's constitutional injury if the injury was caused by "(1) an express policy . . . ; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) . . . a person with final policymaking authority." *Id.* Final policymaking authority includes the authority "to *set* policy—i.e., to 'adopt rules for the conduct of government,'" as distinguished from "an official who merely possesses 'authority to *implement* pre-existing rules.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 740 (7th Cir. 2008) (quoting *Killinger v. Johnson*,

5

389 F.3d 765, 771-72 (7th Cir. 2004)) (emphasis in original).

"State or local law determines whether a person has policymaking authority for purposes of § 1983." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). Considering the Appointment Order to be the relevant "local law" in this case, it is clear that Dunlap had final policymaking authority over employment decisions at the JTDC, as he was specifically empowered "to establish personnel policies; to create abolish, or transfer positions; and to hire, terminate, promote, transfer, and evaluate management and staff of the JTDC." (Appointment Order ¶ 6.c.)

It is less clear whether Dunlap should be viewed as possessing and exercising final policymaking authority *on behalf of Cook County*. It is undisputed that this federal court was the entity that endowed Dunlap with final policymaking authority over the JTDC, and the Appointment Order makes explicit that "[t]he TA shall be an agent of this Court." (*Id.* ¶ 2.) Additionally, Dunlap has complete and total responsibility for administering the JTDC, including the responsibility "[t]o oversee, supervise, and direct all management, administrative, financial, contractual, personnel, security, housing, custodial, purchasing, maintenance, technology, health services, mental health services, food and laundry service, recreational, educational, and programmatic functions relating to the operations of the JTDC consistent with the authority vested in the position of Superintendent of the JTDC." (*Id.* ¶ 5.b.) In Cook County's words, "[t]he County had no right to control the actions of the federal agent appointed to run the JTDC." (Dkt. No. 31 at 4.) On the other hand, Cook County agreed to Dunlap's appointment, pays Dunlap's salary, and benefits from his work—were it not for Dunlap's appointment, Cook County would still retain the responsibility for administering the JTDC. It is

6

Brass's position that, because "Cook County chose Dunlap . . . to bring Cook County into compliance with its settlement agreement," thereby abdicating its own responsibilities regarding administration of the JTDC, Cook County remains liable for Dunlap's actions. (Dkt. No. 29 at 7.)

Ultimately, "*Monell* is a case about responsibility." *Pembaur*, 475 U.S. at 479. As stated above, under § 1983, "municipal liability is limited to action for which the municipality is actually responsible." *Id.* Once Cook County agreed to Dunlap's appointment, it lost any ability to oversee or control his actions. Under these unique circumstances, the court finds that Cook County cannot fairly be considered responsible for Dunlap's actions or the alleged injuries resulting therefrom. The case of *Cortez v. County of Los Angeles*, 294 F.3d 1186 (9th Cir. 2002), cited by Brass, supports this conclusion. *See Cortez*, 294 F.3d at 1189 (reviewing governing law "to ascertain to what degree the municipality has control over the official's performance of the particular function and, thus, whether the municipality can be held liable for the official's actions"). Because Brass's § 1983 claims against Cook County are not based on an express policy, established custom or practice, or decision by a person who exercised final policymaking authority *on behalf of Cook County*, these claims (Count I in part and Count VII in part) are dismissed for failure to state a claim for which relief can be granted under *Monell*.

B. Claims Against the JTDC

Cook County also argues that the JTDC must be dismissed as a "nonsuable entity." (Dkt. No. 25 at 7.) This conclusory statement is not developed by any further argument. Cook County's citation to *Jordan v. City of Chicago, Department of Police* is of limited persuasive value, because the *Jordan* opinion only notes that the Chicago Police Department "does not have

7

a separate legal existence" from the City of Chicago, without further elaboration. *Jordan v. City of Chi., Dep't of Police*, 505 F. Supp. 1, 2-3 (N.D. Ill. 1980) (Moran, J.).

The Seventh Circuit has emphasized that federal courts "look to state law to determine if a defendant is amenable to suit." *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 976 n.2 (7th Cir. 2000) (quoting *Magnuson v. Cassarella*, 812 F. Supp. 824, 827 (N.D. Ill. 1992) (Aspen, J.) and citing Fed. R. Civ. P. 17(b)). "To be sued in Illinois, a defendant must have a legal existence, either natural or artificial." *Id*. Cook County has cited no law regarding the establishment or organization of the JTDC, nor has it explained how the Chicago Police Department's relationship to the City of Chicago is analogous to the JTDC's relationship to Cook County. Without more, the court declines to find as a matter of law that the JTDC lacks a separate legal existence that would enable it to be named as a defendant to a lawsuit. *See* Fed. R. Civ. P. 9(a)(2) (party raising the issue of capacity to be sued "must do so by a specific denial"); *but see West By & Through Norris v. Waymire*, 114 F.3d 646-47 (7th Cir. 1997) (assuming without further analysis that the Town of Frankton's Police Department "is almost certainly not a suable entity separate from the Town").

As a municipal entity, however, the JTDC can only be found liable under § 1983 under a *Monell* theory of liability. Because the relevant actions of Dunlap and Welch in administering the JTDC were not controlled by either Cook County or the JTDC, as noted above, municipal liability is lacking in this case. Brass's § 1983 claims against the JTDC (Count II in part and Count VII in part) are therefore dismissed for failure to state a claim for which relief can be granted.

C.  Claims Against Dunlap and Welch[2]

Dunlap and Welch argue that they cannot be liable under § 1983, because they are not state actors. Section 1983 "deals only with those deprivations of rights that are accomplished under the color of the law of 'any State or Territory.'" *Dist. of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973); *see also* 42 U.S.C. § 1983 (amended in 1979 to include the District of Columbia). Specifically, § 1983 states in relevant part:

> Every person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia*, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added).

It is undisputed that Dunlap has been expressly made an agent of the federal court, authorized through a federal court order to implement and enforce other federal court orders. (*See* Appointment Order ¶ 2.) Moreover, the Appointment Order explicitly assigned to Dunlap the task of "promptly establish[ing] an Office of the Transitional Administrator (OTA) . . . [which] shall include reasonable staff to effectuate [the Appointment] Order" (*Id.* ¶ 7.a.) As an

---

[2] In their motion to dismiss, Dunlap and Welch initially argue that "this Court has expressly conferred absolute immunity from suit on the OTA Defendants in connection with their work at the JTDC." (Dkt. No. 42 at 3 (citing Appointment Order ¶ 7.h.).) However, in their reply brief Dunlap and Welch acknowledge that the scope of their judicially-conferred immunity changed on June 22, 2010, with the entry of a court order making their immunity coextensive with that of the court, rather than absolute. (Dkt. No. 48 at 2 (citing 99 C 3945, Dkt. No. 587).) Dunlap and Welch do not further pursue their immunity argument in their reply brief, instead noting "immunity issues aside . . . Plaintiff cannot in any event sustain causes of action under Section 1983 or Title VII against the OTA Defendants." (*Id.*) The court therefore does not address this argument, which appears to have been waived for purposes of the pending motion.

employee of the OTA, Welch, too, is an agent of the federal court.

Brass argues that the relevant inquiry is "whether the party's actions may be fairly attributable to the state." (Dkt. No. 47 at 3 (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).) *Lugar* and other cases cited by Brass are of limited value, however, because they only address the question of how to distinguish private actors from government actors. That is not the issue before this court, which must distinguish a state actor from a federal actor. In this case, it is clear that the actions of Dunlap and Welch were undertaken pursuant to federal law—*e.g.* the Appointment Order and the underlying Memorandum of Agreement ("MOA"), Agreed Supplemental Order ("ASO"), and Modified Implementation Plan ("MIP"). Moreover, for the reasons set forth in Section 1.A above, this court has found that the actions of Dunlap and Welch are not fairly attributable to Cook County.

While it is true that the incarceration and rehabilitation of juveniles convicted in state court and the supervision of personnel employed by the county for this purpose are functions traditionally performed by state government, in this case Dunlap has been explicitly charged with the task of "restructur[ing] the JTDC into an institution that substantially complies with the MOA, the ASO, and the MIP." (Appointment Order ¶ 5.b.) In other words, Dunlap's administration of the JTDC is guided wholly and completely by federal court orders, which explicitly authorize Dunlap to terminate the employment of Cook County employees in his capacity as a federal agent. (*See* Appointment Order ¶ 6.c. ("The TA shall have . . . [t]he power to establish personnel policies; to create, abolish, or transfer positions; and to hire, terminate, promote, transfer, and evaluate management and staff of the JTDC.").) Moreover, the court is not persuaded by Brass's argument that Cook County's level of financial entanglement with the

10

OTA[3] necessarily transforms Dunlap and Welch into state actors. As the Sixth Circuit has noted in distinguishing between private actors and state actors, "neither public funding nor private use of public property is enough," by itself, to establish the requisite nexus to the state for purposes of § 1983. *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000). Under the unique circumstances of this case, for the reasons stated above, the court finds that Dunlap and Welch cannot be considered state actors under § 1983. Brass's § 1983 claims against Dunlap and Welch (Count III in part, Count IV, Count V in part, and Count VI) are accordingly dismissed for failure to state a claim for which relief can be granted.

2.  Brass's Title VII Claims

    A.  Claims Against Cook County

Title VII makes it unlawful for "an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals' race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). By its plain terms, Title VII's definition of "employer" includes the employer's agents, *see* 42 U.S.C. § 2000e(b), thus "[c]ourts are to interpret Title VII 'based on agency principles.'" *Mateau-Anderegg v. Sch. Dist.*

---

[3] Brass has alleged in her response that "Dunlap and Welch even shared the same office space and equipment and Cook County funds. Further, they used Cook County's municipal email system, as well as their use of Cook County time cards, databases, etceteras." (Dkt. No. 29 at 10; *see also* Dkt. No. 47 at 5, 9.) Brass also contends that "Dunlap and Welch received compensation from Cook County and there is a genuine issue of material controversy as to whether either participated in, among other things, any county insurance benefit programs, county credit unions, county savings and retirement programs, county educational programs, and whether the OTA received and participated in any of the county or state or grant programs." (Dkt. No. 29 at 6-7.) Dunlap and Welch dispute a number of these assertions. (*See* Dkt. No. 48 at 4.)

*of Whitefish Bay*, 304 F.3d 618, 623 (7th Cir. 2002) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). Under the Restatement (Third) of Agency, an employer is vicariously liable for acts of its employee/agent if the employer "controls or has the right to control the manner and means of the agent's performance of work." Restatement (Third) of Agency § 7.07 (2006).

Cook County first argues that it cannot be liable for Dunlap and Welch's acts or omissions under Title VII, because Dunlap and Welch are the express agents of the federal court, not Cook County. Additionally, Cook County argues that it cannot be liable for Dunlap and Welch's acts or omissions, because Cook County "expressly has no control over the actions of the TA and the OTA; has no control over the funding of the TA and the OTA;[4] and, has no right to discharge the TA and the OTA." (Dkt. No. 25 at 10.) Brass does not respond to this argument.

For the reasons set forth in Section 1.A above, the court agrees that Cook County lacks the ability to control the "manner and means" of Dunlap and Welch's administrative actions. The court also agrees that Dunlap and Welch are agents of the federal court, and not Cook County. Accordingly, Cook County cannot be held liable for the acts or omissions of Dunlap and Welch in their administration of the JTDC, and Brass's Title VII claim against Cook County (Count I in part) is dismissed for failure to state a claim for which relief can be granted.

---

[4] Cook County does have the ability to bring before the court any objections it has to OTA expenditures in excess of $50,000, and the right to petition the court for relief if Cook County believes the OTA account is being mismanaged. (*See* 99 C 3945, Dkt. No. 431.)

B.  Claims Against the JTDC

As discussed in Section 2.A above, because the relevant actions of Dunlap and Welch in administering the JTDC were not controlled by the JTDC, Brass's Title VII claim against the JTDC (Count II in part) is dismissed for failure to state a claim for which relief can be granted.

C.  Claims Against Dunlap and Welch

Dunlap and Welch first argue that they cannot be liable under Title VII, because neither Dunlap nor Welch is Brass's "employer" in the general sense of the word. Brass, in turn, argues that Dunlap and Welch acted on behalf of her employer, noting "[i]f they do not represent and act on behalf of Cook County; then they had no authority to terminate Plaintiff's employment as she was allegedly not their employee to be terminated by them in the first place." (Dkt. No. 47 at 4-5.)  Brass further notes that "Dunlap and [Welch] were given complete hiring and firing authority as indicated in the Agreed Order." (*Id.* at 5.)

For the reasons set forth above, the court has found that Dunlap and Welch cannot reasonably be considered agents of Cook County for purposes of Title VII liability. However, in Title VII cases the relevant question is whether Dunlap and Welch had the ability to control Brass's actions. *See Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 634 n.5 (7th Cir. 2009) (citing *Reynolds v. CSX Transp. Inc.*, 115 F.3d 860, 869 (11th Cir. 1997), for the proposition that "whether a company is an employer for purposes of Title VII is based on the 'economic realities of the situation viewed in light of the common law principles of agency and the right of the employer to control the employee'"). If the alleged employer "exercises significant supervisory control over the worker," as in the case of the business client of a temporary employment agency, the entity will "typically qualif[y] as an employer." *Id.* (citing EEOC Notice 915.002,

13

Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, Dec. 3, 1997).

Although Brass has not alleged that Dunlap, Welch, or the OTA exercised supervisory control over Brass's work, the Appointment Order makes clear that Cook County has been divested of *any* administrative authority over the JTDC and its personnel. (*See* Appointment Order ¶ 5.b. (giving the TA the responsibility "[t]o oversee, supervise, and direct all management, administrative, financial, contractual, personnel, security, housing, custodial, purchasing, maintenance, technology, health services, mental health services, food and laundry service, recreational, educational, and programmatic functions relating to the operations of the JTDC consistent with the authority vested in the position of Superintendent of the JTDC.").) Under these unique circumstances, the court finds that the OTA and its agents are the only entities that can reasonably and realistically be considered Brass's employer.

Turning to the relevant statutory language, the court must next consider whether the OTA employs "fifteen or more employees." *See* 42 U.S.C. § 2000e(b).[5] Dunlap and Welch argue that the OTA "has no employees" and therefore fails to meet the numerosity requirement set forth in 42 U.S.C. § 2000e(b). A reasonable application of the above determination that the OTA employs Brass leads to the conclusion that the OTA is the "employer" of all JTDC personnel, the number of which easily satisfies Title VII's numerosity requirement. Accordingly, the court

---

[5] By its plain language, another provision of § 2000e(b) expressly "exclud[es] federal entities from its definition of employer." *Loeffler v. Frank*, 486 U.S. 549 (1988). However, Congress later amended Title VII to bring federal employees within its coverage. *Id.*; *see* 42 U.S.C. § 2000e-16(a). Dunlap and Welch have not argued in their motion to dismiss that their positions as agents for the federal court make them exempt from Title VII's provisions.

finds that Dunlap and Welch can be considered Brass's "employer" for purposes of Title VII.[6]

CONCLUSION

For the reasons set forth above, under the unique circumstances of this case, the court finds that plaintiff Tamara Brass has failed to state a claim for which relief can be granted against defendants Cook County and the JTDC under 42 U.S.C. § 1983 and under Title VII of the Civil Rights Act of 1964, as amended, and has failed to state a claim for which relief can be granted against defendants Earl Dunlap and Brenda Welch under 42 U.S.C. § 1983. Accordingly, the court grants Cook County's motion to dismiss (Dkt. No. 25) and dismisses Counts I, II and VII in their entirety. The court grants in part Dunlap and Welch's motion to dismiss (Dkt. No. 42) and dismisses Counts IV and VI in their entirety, and Counts III and V insofar as these claims allege violations of 42 U.S.C. § 1983. Counts III and V remain pending against Dunlap and Welch to the extent these claims allege violations of Title VII. The defendants' answers to Count III and V are to be filed by February 7, 2011. Counsel are to confer and file a joint Form 52 no later than February 11, 2011. The case is set for a report on status and entry of a scheduling order at 9:00 a.m. on February 17, 2011.

ENTER:

_James F. Holderman_
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: January 14, 2011

---

[6] For the sake of completeness, the court notes that Cook County is obligated to indemnify Dunlap and Welch "to the same extent that Cook County . . . is obligated to indemnify the Superintendent of the JTDC." (99 C 3945, Dkt. No. 587.) Accordingly, the distinction between Cook County and the OTA defendants may be largely academic in practical terms.