**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TAMARA D. BRASS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 6873 |
| v. | ) | |
| | ) | |
| COOK COUNTY, et al., | ) | Chief Judge James F. Holderman |
| | ) | |
| Defendants. | ) | |

**REPLY OF DEFENDANTS DUNLAP AND WELCH**
**IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS**
**III-VI and VIII-X OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

Now come Defendants EARL DUNLAP and BRENDA WELCH, by and through their counsel, LOEVY & LOEVY, and submit this reply in support of their motion to dismiss Counts III-VI and VIII-X of Plaintiff's Second Amended Complaint.

## I. Counts III-VI and VIII-X Should Be Dismissed Because Dunlap and Welch Are Immune from Suit.[1]

As Defendants argued in their opening brief, courts use a functional test to determine whether an individual can invoke immunity in a particular case. *Forrester v. White*, 484 U.S. 219, 224 (1988). Plaintiff reads *Forrester* to mean that anytime a personnel decision is made, then no immunity will attach. This case is different from *Forrester*, however, in that Dunlap and Welch's authority to terminate JTDC employees derives directly from the court order pursuant to which they are acting. Thus, as this Court has recognized the TA's personnel decisions are part of an overall judicial mandate to administer the JTDC and are "guided *wholly and completely* by

[1] Defendants are aware of this Court's June 22, 2011 ruling in *Coleman v. Cook County, et al.*, 10 cv 2388 (N.D.Ill.) (Holderman, C.J.), which also deals with an assertion of immunity by the TA. Defendants recognize that similar legal principles are implicated in this dispute, though they preserve the arguments for the purposes of appeal.

federal court orders . . . ." *See* Doc. No. 59 at 10 (emphasis supplied). The actions taken by Dunlap and Welch consistent with those orders, including but not limited to the termination of Plaintiff, should fall within the grant of immunity. The facts of this case represent the scenario in which a party appointed by a federal court to administer a troubled facility is most likely to become engaged in litigation. If the immunity clause does not protect the TA and his staff from personnel decisions such as this, then the immunity clause has essentially has been read out of the Appointment Order.

Additionally, Plaintiff fails to respond to Defendants' argument that a receiver who "faithfully and carefully carries out the orders of his appointing judge" shares that judge's immunity. *Kermit Const. Corp. v. Banco Credito Y Ahorro Ponceno*, 547 F.2d 1, 3 (1st Cir. 1976). To the extent Plaintiff was entitled to challenge her termination through the grievance procedure guaranteed through her union's collective bargaining agreement or by means of an unfair labor practice charge under the Illinois Public Labor Relations Act, 5 ILCS 315/11, procedural safeguards were in place to protect the Plaintiff's rights from overreaching by the TA and his staff. Accordingly, the Seventh Circuit's analysis in *Ashbrook v. Hoffman*, 617 F.2d 474, 477 (7th Cir. 1980), applies. In *Ashbrook*, the Seventh Circuit found that two court-appointed partition commissioners were covered under absolute quasi-judicial immunity with respect to their activities relating to the sale of property. In so ruling, the court in *Ashbrook* stressed the existence of a review process to protect the rights of the parties. Because Plaintiff's termination also is subject to review via the contractual arbitration procedure, the Seventh Circuit's analysis in *Ashbrook* should result in the recognition of similar immunity for Dunlap and Welch.

Further, Plaintiff provides no legal support for her contention that the Court's revision to the original immunity language covering Dunlap and Welch is not legally effective.

For these reasons, the Court should find that Dunlap and Welch are immune from suit.

## II. As Brass Concedes, Her § 1983 Claims Have Been Dismissed.

As Brass acknowledges in her response, this Court has dismissed with prejudice Brass' § 1983 claims against Dunlap and Welch (Counts IV and VI in their entirety and portions of Counts III and V). *See* Order of May 4, 2011, Doc. No. 89, at 3.

## III. Counts VIII-X Should Be Dismissed Because This Court Should Not Recognize A Freestanding *Bivens* Remedy for the Constitutional Violations Alleged.

Plaintiff argues that this Court should recognize a freestanding *Bivens* remedy against Dunlap and Welch because, in her view, her Collective Bargaining Agreement is "utterly useless." Plaintiff sets forth no facts whatsoever in support of this assertion, however, nor does her complaint contain any allegations to that effect.[2] To the contrary, Plaintiff's Second Amended Complaint asserts that she has an enforceable Collective Bargaining Agreement and that her union, AFSCME, promised to handle Plaintiff's complaints. *See, e.g.*, Second Amended Complaint at ¶¶ 14, 26, 33. Thus, Plaintiff fails to distinguish *Bush v. Lucas*, 462 U.S. 367 (1983); *Massey v. Helman*, 196 F.3d 727, 736-37 (7th Cir. 1999); *Robbins v. Bentsen*, 41 F.3d 1195, 1202 (7th Cir. 1994); and *Feit v. Ward*, 886 F.2d 848, 851-56 (7th Cir. 1989)) in any meaningful way. Under these cases, it is well-established that employees may not haul federal employers into court based on allegations of First Amendment retaliation.

Plaintiff also argues that the Court should recognize a *Bivens* cause of action here unless Dunlap and Welch can point to some alternative act of Congress that provides her with the same remedy. This position misunderstands the law. Defendants need not show that Congress has created a remedy that would make Plaintiff whole in the same way as a *Bivens* cause of action. *See e.g.*, *Scheweiker v. Chilicky*, 487 U.S. 412, 417-19 (1988) (declining to infer a *Bivens* remedy for plaintiffs who suffered wrongful cessation of their disability benefits even where existing process

[2] Plaintiff references an off-hand remark made by an attorney for the County earlier in this litigation. This attorney, who has not been involved in the *Doe* litigation, was in no way purporting to speak about the power of Brass's union to advocate on her behalf.

provided only belated restoration of back benefits and no compensatory damages). Here, Brass's union grievance procedures, along with the "special factors" noted in Defendants opening brief, counsel against inferring a freestanding *Bivens* cause of action in this case.

## IV. Counts VIII and IX Should Be Dismissed Because Plaintiff Has Failed to State a First Amendment Retaliation Claim.

### A. This Court Should Disregard Brass's Factual Allegations that Are Not Part of the Pleadings in this Case.

Plaintiff's response contains a number of new factual allegations about her "protected speech" that are not in her complaint. These new factual allegations include the following:

- "JTDC legal counsel often used the 'County Documents' in answering subpoenas by residents and staff for claims against the JTDC." Plaintiff's Resp. at 15.
- "The 'County Documents' also contained incident reports on riots, attempted suicides, attempted attacks on staff and residents, and indicated the overall efficiency and management of the JTDC." *Id.*
- "The supervisors of each of the housing units had a duty to maintain the log books which contained the incident reports." *Id.*
- "Brass became aware of the importance of 'County Documents' when she was instructed by JTDC legal counsel Jennifer Kohler to pull information form the log books for a subpoena." *Id.*
- "While Brass was on medical leave, Welch instructed another employee, Brenda Kemp, to destroy the 'County Documents.'" *Id.*
- "Mr. Blanchard told Brass he would investigate and made a copy of Brass's employee ID." *Id.*

- "At that time, Mr. Blanchard indicated to Brass that he was unsure as to whether to report Brass's concerns to Chief Judge Evan's [sic] or to the Federal Court overseeing the JTDC." *Id.* at 16.

In considering the sufficiency of Plaintiff's amended complaint on this motion to dismiss, the Court is limited to the pleadings. *Greenberg v. Boettcher & Co.*, 755 F. Supp. 776, 778 (N.D. Ill. 1991); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). Accordingly, the Court should disregard Plaintiff's attempts in her response to buttress the allegations of the amended complaint with additional assertions of fact.

**B. Plaintiff Has Not Alleged that She Engaged in Speech that is Protected for the Purpose of a First Amendment Retaliation Claim.**

Plaintiff's complaint still fails to allege that she engaged in protected speech.[3] In an effort to distinguish *Connick* and *Altman*, Plaintiff asks the Court to focus solely on the one aspect of her alleged speech that arguably touches on a public concern: that she complained to the Inspector General about being assigned the job of shredding paper. *See* Plaintiff's Response at 15-16. Such an approach is not proper. Just as the Supreme Court in *Connick* was careful to look evaluate the context of the employee's speech and to evaluate the record as a whole, the Court must do the same. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983) ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, *as revealed by the whole record*.") (emphasis added); *see also Wainscott v. Henry*, 315 F.3d 844, 850 (7th Cir. 2003) (quoting *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir.1999)) ("Speaking up on a topic that may be deemed one of public importance does not automatically mean the employee's statements address a matter of public concern as that term is

[3] Plaintiff devotes a substantial portion of her brief arguing that she has sufficiently pled other elements of a First Amendment retaliation claim. Because Defendants did not argue that she failed to plead those elements, they do not respond to those arguments here.

employed in *Connick*.")

In *Connick*, the Court considered whether a questionnaire distributed by an employee dealt with a matter of public concern. Although certain parts of the questionnaire touched on matters of public concern (*i.e.*, whether public employees were pressured to participate in political work), the questionnaire dealt largely with the issue of office transfers. Paying careful attention to context, and evaluating the record as a whole, the Court observed that the questionnaire emerged on the heels of the employee's own transfer and after a dispute between the employee and her employer about the office transfer policy. *Id.* at 153-54. The Court therefore concluded that the employee's questionnaire was "most accurately characterized as an employee grievance concerning internal office policy," notwithstanding that some of the content touched on a matter of public concern. *Id.* at 154.

The same is true here. Brass's complaints dealt with personal allegations of sexual harassment and Brass's dissatisfaction with her job assignments. Specifically, Brass complained about allegedly being forced to work in unsafe conditions, allegedly being denied time off requests, and allegedly being asked to perform "menial" duties that allegedly were outside the scope of her employment. Plaintiff's Second Amended Complaint at ¶¶ 18, 84, 98. On the whole, Brass's complaints were essentially personal in nature. Although one of these complaints was made to the Inspector General and arguably touched upon a matter of public concern (*i.e.*, her complaint about being assigned the task of shredding documents), the context of that complaint is important. It was made amidst ongoing dispute with her employer about a range of issues personal to *Brass*, including but not limited to alleged sexual harassment, *id.* at ¶ 4, loitering at the JTDC after he shift ended, *id.* at ¶ 17, being assigned "menial" duties, *id.* at ¶ 18, being assigned to work in a dusty room without windows, *id.* at ¶ 18, being denied time off requests, *id.* at ¶ 98, and being asked to work in unsafe conditions, *id.* at ¶ 98. That she also

happened to bring one of these complaints to the Cook County Inspector General does not render speech protected under *Connick*.

Additionally, Defendants Dunlap and Welch have an important interest in promoting the efficiency of the public services performed at the JTDC. *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 671 (7th Cir. 2009) (the Court must balance the employees interests as a citizen, in commenting upon matters of public concern and the interest of the government employer, in promoting the efficiency of the public services it performs though its employees). Under the Appointment Order, Defendants Dunlap and Welch have a mandate from this Court to accomplish specific goals at the JTDC within a limited time period. Given the transitional nature of their tenure at the JTDC, they have an even greater interest than any other public employer in efficient performance of public services. If they are to achieve those goals, they must be allowed to assign administrative personnel, such as Brass, to administrative tasks as needed. To the extent that Plaintiff can be characterized as having an interest, *as a citizen*, in speaking out on the matter of shredding documents, those interests are outweighed by the interests of Dunlap and Welch of being able to manage the administrative workforce at the JTDC so that they can accomplish their Court-ordered duties and turn control of the JTDC back to Cook County authorities.

**Conclusion**

For the foregoing reasons, Defendants Earl Dunlap and Brenda Welch respectfully request that this Court dismiss Counts III-VI and VIII-X of Plaintiff's Second Amended Complaint with prejudice.

Respectfully submitted:

/s/Elizabeth Mazur
One of Defendants' Attorneys

Arthur Loevy
Jon Loevy
Elizabeth Mazur
LOEVY & LOEVY
312 N. May Street, Suite 100
Chicago, Illinois 60607
(312) 243-5900

**CERTIFICATE OF SERVICE**

I, Elizabeth Mazur, an attorney, certify that on June 30, 2011, I served this Reply of Defendant Earl Dunlap and Brenda Welch's in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint on all counsel of record via the ECF electronic filing system.

/s/ Elizabeth Mazur