IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMARA D. BRASS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09 CV 6873 |
| | ) |
| EARL DUNLAP, Transitional Administrator of | ) |
| Cook County Juvenile Temporary Detention | ) |
| Center, and BRENDA WELCH, Deputy | ) |
| Transitional Administrator of Cook County | ) |
| Juvenile Temporary Detention Center, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Tamara Brass ("Brass") is a former employee of the Cook County Juvenile Temporary Detention Center ("JTDC"). In her Second Amended Complaint, Brass alleges that defendants Earl Dunlap, Transitional Administrator of the JTDC ("TA" or "Dunlap"), and Brenda Welch, Deputy Transitional Administrator of the JTDC ("Deputy Administrator" or "Welch"), are liable under Title VII and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 US 388 (1971), for harassing Brass, retaliating against Brass for engaging in protected activities, and terminating Brass's employment without just cause. (*See* Dkt. No. 76 ("2d Am. Compl.") and Dkt. No. 100 (12/20/2011 Order) (limiting the 2d Am. Compl. to Count III (in part), Count V (in part), Count VIII, Count IX, and Count X).)

The TA and Deputy Administrator (together "Defendants") filed their Answer to the Second Amended Complaint on October 2, 2012, and included nine affirmative defenses. (Dkt.

1

No. 107 ("Ans.").) Pending before the court is Brass's "Motion to Strike Defendants' Affirmative Defenses." (Dkt. No. 109 ("Brass's Mot.").) For the reasons set forth below, Brass's motion is denied. A status hearing remains set for November 29, 2012 at 9:00 a.m. for purposes of entering a scheduling order in this case. The parties are again encouraged to discuss settlement.

## BACKGROUND

Brass began her employment at the JTDC on September 1, 1996, as a Clerk IV. (2d Am. Compl. ¶ 9.) She was later promoted to the position of Administrative Assistant II, before being terminated from her employment on November 9, 2009. (*Id.*) Brass generally alleges that "[s]ince Dunlap's appointment[1] Plaintiff has been subjected to intentional, systematic and continuous harassment by Deputy Administrator [Welch] and the then Acting Deputy Superintendent, Mullins." (*Id.* ¶ 11.)

In December 2008, Brass complained to Mullins, to Brass's AFSCME union representative, and to the EEOC about comments made by Welch about "Plaintiff's nipples showing through her clothes." (*Id.* ¶¶ 14, 16.) In retaliation for Brass's sexual harassment complaint, Welch and Mullins thereafter prevented Brass from properly signing in and out of work, subjected her to "frivolous" disciplinary allegations based on falsified or erroneous timesheets, stripped her of her job duties, assigned her duties that were outside the scope of her

---

[1] The TA was appointed on August 14, 2007, "with the authority and responsibility to bring the [JTDC] into substantial compliance with [various court orders issued by District Judge John A. Nordberg in *Doe v. Cook County*, 99 C 3945] and, if consistent with Illinois law, to prepare the JTDC for the transition of administrative authority over its operations to the Office of the Chief Judge of the Circuit Court of Cook County." (99 C 3945, Dkt. No. 330 ¶ 1.) The TA continues to serve in this capacity as of the date of this order.

employment, and ultimately terminated her employment. (*Id.* ¶¶ 12-13, 15, 17-18.) During this same time period, Welch ordered Brass "to destroy files containing medical and legal documents, log books and other information that were often needed for FBI, DCFS, Inspector General investigations as well as other litigation." (*Id.* ¶ 19.) Brass refused to destroy these documents and complained to the Inspector General about Welch's order to destroy them. (*Id.* ¶¶ 19-20.) In retaliation for Brass's refusal to destroy the documents, Brass was accused of falsifying her timesheets and was suspended for three days. (*Id.* ¶ 19.) Brass was also further retaliated against for both her sexual harassment complaint and her refusal to destroy documents, in that she was denied her requests for time off, forced to work in unsafe conditions, and verbally threatened by Welch, who at one point "symbolically point[ed] her fingers as an imaginary gun and shot[ ] Plaintiff." (*Id.* ¶ 21.)

Brass filed a charge of retaliation with the EEOC on July 30, 2009, received her right-to-sue letter on August 5, 2009, and filed this lawsuit on November 2, 2009. (*Id.* ¶¶ 22-23, 25.) Brass was terminated from her employment on November 9, 2009, with an effective date of November 4, 2009. (*Id.* ¶ 25.)

## LEGAL STANDARD

Defendants' Answer alleges nine separate items titled "affirmative defenses," each of which is one sentence in length, including: (1) failure to state a claim for which relief may be granted; (2) statute of limitations; (3) waiver and/or estoppel; (4) failure to exhaust administrative, statutory and/or jurisdictional prerequisites; (5) Brass's failure to present her Title VII claims to the EEOC; (6) the TA's exercise of reasonable care to prevent and correct discrimination; (7) the TA's lack of personal involvement in the alleged discriminatory conduct;

(8) Brass's failure to mitigate damages; and (9) Brass's failure to take advantage of the JTDC's safeguards to protect against harassment. (Ans. 22-24.) Brass has moved to strike each of these defenses pursuant to Federal Rule of Civil Procedure 12(f).

Under Rule 12(f), a court may strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored in this circuit because of their potential to cause delay in litigation; however, they will be granted where they serve to remove "unnecessary clutter" from a case. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

As pleadings, affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure. *Id.* Accordingly, to constitute a sufficient pleading, an affirmative defense must include a "short and plain statement" of the defense. *Id.* (quoting Fed. R. Civ. P. 8(a)); *see also* Fed. R. Civ. P. 8(b)(1)(A) (responding party required to "state in short and plain terms its defenses to each claim asserted against it"). "[B]are bones conclusory allegations" that fail to address the necessary elements of the alleged defense are insufficient on the face of the pleading. *Id.* at 1294-95. In reviewing a motion to strike, "the court must accept all factual allegations as true and draw all reasonable inferences in favor of the pleader." *Renalds v. S.R.G. Rest. Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. Nov. 2, 2000) (Alesia, J.).

## ANALYSIS

1. <u>Failure to State a Claim</u>

Defendants' first alleged affirmative defense states, in its entirety, "The Complaint fails to state a claim upon which relief may be granted." (Ans. 22.)

As a general matter, "failure to state a claim" is not technically an affirmative defense,

"because it does not raise any matter outside of Plaintiff's complaint." *LaSalle Bank Nat'l Ass'n. vs. Paramont Props.*, 588 F. Supp. 2d 840, 860 (N.D. Ill. Nov. 24, 2008) (St. Eve, J.). Regardless, the Federal Rules of Civil Procedure clearly envision that the defense of "failure to state a claim upon which relief can be granted" is appropriately included in a party's responsive pleading. *Id.*; *see also* Fed. R. Civ. P. 12(b)(6) (stating the general rule that "[e]very defense to a claim for relief in any pleading *must* be asserted in the responsive pleading if one is required" before listing specific defenses that may also be asserted "by motion") (emphasis added) and Fed. R. Civ. P. App'x of Forms (Form 30) (model "Answer Presenting Defenses Under Rule 12(b)"). Parties may also assert a defense of "failure to state a claim" by motion to the court before filing their responsive pleading under Rule 12(b)(6). Additionally, the Federal Rules of Civil Procedure contemplate that the defense of "failure to state a claim" may be raised under Rule 12(c) or at trial. Fed. R. Civ. P. 12(h)(2).

While Defendants' defense of "failure to state a claim" is undeniably conclusory in its presentation, Defendants cannot be faulted for following the model "Answer Presenting Defenses Under Rule 12(b)," which states only "The complaint fails to state a claim upon which relief can be granted." Fed. R. Civ. P. App'x of Forms (Form 30). Moreover, to the extent Defendants have already briefed and litigated this defense before the court, (*see* Dkt. Nos. 58, 59, 100), Brass cannot complain that she has received insufficient notice of its factual basis. Accordingly, the court declines to strike this defense at this time.

2.  <u>Additional Defenses</u>

Brass makes three additional arguments regarding the "remaining Affirmative Defenses," (Brass's Mot. ¶¶ 7-8), which the court addresses in turn below.

First, Brass argues that Defendants' affirmative defenses "are vague, conclusory allegations that fail to provide reasonable notice of the defense claimed." (Brass's Mot. ¶ 7.) While Defendants' remaining affirmative defenses are certainly sparse, the court finds that each of the defenses set forth in Defendants' Answer is sufficient for purposes of giving Brass fair notice of the defenses on which Defendants plan to rely. In accordance with Rule 8(b)(1)(A), Defendants have "state[d] in short and plain terms [their] defenses to each claim" in a manner that permits Brass to proceed with appropriate discovery. Nothing more is required at this stage of the litigation.

Second, Brass argues that Defendants have "merely reiterate[d] [their] denials in their Answer," citing as examples Defendants' sixth, seventh, and ninth affirmative defenses. (Brass's Mot. ¶ 7.) The court disagrees. Defendants' sixth and ninth affirmative defenses allege that the TA "exercised reasonable care to prevent and to promptly correct any alleged discriminatory conduct in its workplace," and that "Plaintiff failed to act with like reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." (Ans. at 23-24.) These defenses include factual allegations that appropriately go beyond the scope of Brass's Second Amended Complaint, and are therefore more than mere denials. Defendants' seventh affirmative defense alleges that the TA "did not aid, abet, ratify, condone, encourage or acquiesce in any alleged discriminatory conduct." (Ans. at 23.) This defense also raises new factual allegations that have the potential to defeat Brass's claims, and are therefore appropriately raised as an affirmative defense.

Finally, Brass argues that Defendants' second, third, fourth, fifth and eighth affirmative defenses "are not appropriate affirmative defenses" because they do not "assert[ ] external

reasons why, even given the Complaint's truth, the requested relief is barred or unattainable." (Brass's Mot. ¶ 8 (citing *Sliwa v. Hunt*, No. 92 C 6215, 1992 WL 350661, at *1 (N.D. Ill. Nov. 24, 1992) (Shadur, J.) ("the essence of an affirmative defense is that it *admits* what plaintiff alleges, but asserts that plaintiff cannot win anyway for the reason or reasons set out in the affirmative defense") (emphasis in original).) Brass makes no effort to apply the cited legal precedent to Defendants' alleged affirmative defenses, and the court is unpersuaded by Brass's blanket assertion that Defendants have failed to adequately set forth "external reasons" why Brass cannot prevail on her claims. In fact, two of the defenses at issue—statute of limitations and estoppel/waiver—are specifically set forth in Federal Rule of Civil Procedure 8(c) as examples of appropriate affirmative defenses.

## CONCLUSION

For the reasons set forth above, Brass's "Motion to Strike Defendants' Affirmative Defenses" (Dkt. No. 109) is denied. A status hearing remains set for November 29, 2012 at 9:00 a.m. for purposes of entering a scheduling order in this case. The parties are again encouraged to discuss settlement.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: November 28, 2012